John J. HOGAN and David J. Rees, Each Individually, and on Behalf of all Other Persons Similarly Situated, Plaintiffs,

v.

GENERAL ELECTRIC COMPANY; Stephen D. Hollenberg, Individually, and as an employee of General Electric Company; and Ronald R. Pressman, Individually, and as an Employee of General Electric Company, Defendants.

No. 1:97–CV–135.

United States District Court, N.D. New York.

May 24, 2001.

Berger, & DuCharme, LLP, Attorneys for Plaintiffs, Clifton Park, NY, John B. DuCharme, Joseph C. Berger.

Nixon Peabody LLP, Attorneys for Defendants, Rochester, NY, Eugene D. Ulterino, Margaret A. Clemens, of counsel.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. BACKGROUND

This action was brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621–34. Plaintiff Carmen LaPorta ("LaPorta" or plaintiff) has made a post-trial application for 1) pre-judgment and post-judgment interest, 2) attorneys fees, costs, and disbursements, 3) adoption of the jury's award of front pay, and 4) a judgment that defendant General Electric Company ("GE") willfully violated the ADEA as a matter of law. GE does not oppose plaintiff's motion for pre-judgment and post-judgment interest; however, it does oppose plaintiff's remaining requests. Oral argument was heard on May 11, 2001 in Utica, New York. Decision was reserved.

## II. FACTS

Plaintiffs John Hogan ("Hogan") and David Rees ("Rees") filed an age discrimination charge with the Equal Employment Opportunity Commission ("EEOC") in July 1996, alleging that GE violated the ADEA when it conducted an involuntary reduction in force in July 1995. The EEOC issued right to sue letters in December 1996. Hogan and Rees then commenced this action, asserting claims under the ADEA and the New York State Human Rights Law, ("HRL"), N.Y. Exec. Law § 296(6) (McKinney 1993 & Supp. 2000). Plaintiffs LaPorta and William Sheehan ("Sheehan") joined the action in June 1998 as "opt-in" plaintiffs under the Fair Labor Standards Act, 29 U.S.C. § 216(b). Following discovery and motion practice, each plaintiff's claims of disparate impact and disparate treatment age discrimination and Hogan and Rees' HRL claims proceeded to trial.[1]

On March 28, 2001, after a thirteen day jury trial, the jury found in favor of LaPorta on his disparate treatment age discrimination claim. However, the jury found in favor of GE with respect to 1) the plaintiffs' common claim of disparate impact age discrimination, 2) Hogan's, Rees', and Sheahan's disparate treatment claims, and 3) Hogan's and Rees' HRL claims. The jury awarded LaPorta $ 117,000 lost back pay and issued an advisory verdict of front pay in the amount of $ 110,000 payable over seventeen years.

## II. DISCUSSION

### A. Pre-judgment and Post-judgment Interest

Plaintiff seeks, and defendant does not oppose, an award of pre-judgment interest on his back pay award, pursuant to 29 U.S.C. § 626(b). "In an ADEA case, prejudgment interest is designed to compensate the plaintiff for loss of the use of money wrongfully withheld through an un-

---

1. LaPorta's and Sheehan's HRL claims were dismissed immediately prior to trial.

lawful discharge." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 281 (2d Cir.1987).

■ Determining the rate to apply for pre-judgment interest is a matter left to the discretion of the district court. *See Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071 (2d Cir. 1995). When calculating pre-judgment interest, courts in the Second Circuit "often apply the rate of interest provided in 28 U.S.C. § 1961." *Robinson v. Instructional Sys., Inc.*, 80 F.Supp.2d 203, 208 (S.D.N.Y.2000) (citations omitted).[2] The plaintiff requests that pre-judgment interest be calculated according to § 1961. The defendant does not oppose.

■ The appropriate methodology to calculate the amount of pre-judgment interest involves three steps. "First, the award[ ] should be divided pro rata over the appropriate time period." *Id.* Second, the rate of interest referred to in § 1961 is applied. *Id.* Finally, the interest is compounded annually. *Id.*

In the present case, at the first step, the back pay award of $ 117,000 is divided by 70 months (July 1995 through May 2001). This results in $ 1,671.43 per month or $ 20,057.14 per year in back pay. The rate of interest according to the most recent publication by the Board of Governors of the Federal Reserve System is 3.76 percent. *See* Federal Reserve Statistical Release, Selected Interest Rates, at *http://www.federalreserve.gov/releases/H15* (May 21, 2001). Applying this rate and compounding the interest annually results in an award of $ 15,930.01 in prejudgment interest.[3] In addition, the judgment shall reflect a post-judgment interest rate of 3.76 percent, pursuant to § 1961.

**B. Attorneys Fees**

■ "The starting point for the determination of a reasonable fee is the calculation of the lodestar amount." *Quaratino v. Tiffany & Co.*, 129 F.3d 702, 705 (2d Cir.1997)(citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The lodestar amount is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). "In determining the number of hours reasonably expended for purposes of calculating the lodestar,

**2.** Section 1961 provides in pertinent part:

Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

**3.**

| Year | Back Pay | Interest Rate | Interest | Interest |
|------|----------|---------------|----------|----------|
| 7/95–7/96 | $ 20,057.14 | 3.76% | $ 754.15 | $ 20,811.29 |
| 7/96–7/97 | $ 40,868.43 * | 3.76% | $ 1,536.65 | $ 42,405.08 |
| 7/97–7/98 | $ 62,462.22 | 3.76% | $ 2,348.58 | $ 64,810.80 |
| 7/98–7/99 | $ 84,867.94 | 3.76% | $ 3,191.03 | $ 88,058.97 |
| 7/99–7/00 | $ 108,116.11 | 3.76% | $ 4,065.17 | $ 112,181.28 |
| 7/00–5/01 | $ 128,895.58 (10 mos.) | 3.13% (10 mos.) | $ 4,034.43 | $ 132,930.01 |
| Total | | | $ 15,930.01 | |

\* The amount of the previous year's back pay plus accrued interest is carried over and added to the back pay for the next year.

the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino,* 129 F.3d at 705. However, attorney's fees may be awarded for unsuccessful claim as well as successful ones where they are " 'inextricably intertwined' and 'involve a common core of facts or are based on related legal theories.' " *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1183 (2d Cir.1996)(quoting *Dominic v. Consolidated Edison Co.,* 822 F.2d 1249, 1259 (2d Cir.1987). "Once the lodestar amount is calculated, there is a strong presumption that this figure constitutes a reasonable amount." *Fauntleroy v. Staszak,* 3 F.Supp.2d 234, 236 (N.D.N.Y. 1998)(citing *Grant v. Martinez,* 973 F.2d 96, 101 (2d Cir.1992); *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)).

■ LaPorta seeks $ 319,607.00 in attorneys' fees and $ 9,094.74 in costs and disbursements, for a total of $ 328,701.74.[4] GE argues that the amount of attorneys' fees requested should be drastically reduced for several reasons. GE challenges the use of two attorneys for certain matters where it contends one attorney would

have been sufficient. However, the Second Circuit has held that there is no per se rule against the use of multiple attorneys; however, the district court has discretion to decline to compensate or limit the compensation of collaborating attorneys. *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983). In light of the complexity of this case and the fact that LaPorta was suing GE, a large company with significant resources at its disposal, the use of two attorneys was not unnecessary or unreasonable.

■ GE argues that plaintiff's fee application includes time attributable to the other three unsuccessful plaintiffs, LaPorta's unsuccessful claims, and work done when LaPorta was not yet a party to the case. It also asserts that LaPorta is not entitled to fees for unnecessary motions. Plaintiff's time records have been thoroughly reviewed and the following can be deduced: Some claims for research and preparation are excessive and certain motion practice was unnecessary. In addition, the rates of $ 90.00 and $ 100.00 for the services of one of the paralegals is excessive when compared to the $ 50.00

4. The following is a summary of plaintiff's application for attorneys' fees:

| Year | Number of Hours | Rate | Charge |
|---|---|---|---|
| 1996 | 58.0 | $ 150.00 (partner) | $ 8,700.00 |
| 1997 | 28.0 | $ 50.00 (paralegal) | |
| | 11.9 | $ 90.00 (paralegal) | $ 38,546.00 |
| | 240.5 | $ 150.00 (partner) | |
| 1998 | 25.9 | $ 60.00 (paralegal) | $ 78,129.00 |
| | 450.7 | $ 170.00 (partner) | |
| 1999 | 32.4 | $ 60.00 (paralegal) | |
| | 4.0 | $ 100.00 (paralegal) | $ 56,933.00 |
| | 321.5 | $ 170.00 (partner) | |
| 2000 | 26.2 | $ 60.00 (paralegal) | |
| | 16.0 | $ 100.00 (paralegal) | $ 62,264.00 |
| | 347.6 | $ 170.00 (partner) | |
| 2001 | 36.7 | $ 60.00 (paralegal) | |
| | 1.0 | $ 100.00 (paralegal) | $ 75,035.00 |
| | 427.9 | $ 170.00 (partner) | |
| Total | 2,028.3 | | $ 319,607.00 |

and $ 60.00 billed for the two other paralegals. As a result, adjustments have to be made to determine a reasonable amount for attorneys' fees. Accordingly, upon extensive review of the records submitted by the plaintiff in support of his application for attorneys' fees and the arguments of counsel for both sides, it is determined that plaintiff is entitled to the following fees:

| | Year | Reasonable Hours | Rate | Allowance |
|---|---|---|---|---|
| Attorneys | 1996–1997 | 250 | $ 150.00 | $ 37,500.00 |
| | 1998–2001 | 1,400 | $ 170.00 | $ 238,000.00 |
| Paralegals | 1996–1997 | 35 | $ 50.00 | $ 1,750.00 |
| | 1998–2001 | 135 | $ 60.00 | $ 8,100.00 |
| Total | | 1,820 | | $ 285,350.00 |

### C. Costs and Disbursements

 Prevailing parties may also recover, in addition to reasonable attorney's fees, litigation costs and expenses. *O'Grady v. Mohawk Finishing Prods., Inc.*, No. 96–CV–1945, 1999 WL 30988, at *7 (N.D.N.Y. Jan. 15, 1999). This award may include taxable costs, pursuant to 28 U.S.C. § 1920 as well as "all reasonable out-of-pocket expenses that are normally charged to clients." *Id.; see also LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir.1998). However, these expenses "must not be part of ordinary overhead." *Id.*

Plaintiff's application seeks $ 9,094.74 for costs and expenses. GE objects to the following items sought by the plaintiff: 1) Service of process on defendants Stephen Hollenberg and Ronald Pressman, 2) Travel, hotels, and meals to meet with statistical experts, 3) Travel expenses for statistical expert, 4) Office supplies, and 5) Rate for photocopying. Each of these objections is addressed below.

### 1. Process Server

 "A prevailing party will not be entitled to private process server fees if there is no statutory authority for shifting them." *United States v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 172 (2d Cir.

1996). Some courts have awarded private process server costs pursuant to 28 U.S.C. § 1920(1), which provides that the fees of the Clerk and Marshal may be taxed as costs. *See Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 177–78 (9th Cir. 1990); *Tang How v. Edward J. Gerrits, Inc.*, 756 F.Supp. 1540, 1545 (S.D.Fla. 1991), *aff'd*, 961 F.2d 174 (11th Cir.1992). However, the plain language of § 1920 does not authorize taxing the fees of private process servers as costs. *See Merritt Meridian Constr. Corp.*, 95 F.3d at 172. Accordingly, defendant's request to exclude plaintiff's fee of $ 75.00 for service of process on defendants Hollenberg and Pressman is granted.

### 2. Travel Expenses

 The amount LaPorta seeks to recover for his attorneys to meet with the statistical expert appears reasonable and is recoverable. *See Thomas v. Board of Educ.*, 505 F.Supp. 102, 105 (N.D.N.Y. 1981). In addition, reasonable travel expenses for witnesses are taxable as costs pursuant to 28 U.S.C. § 1920. *See* 28 U.S.C. § 1821(4). However, although plaintiff's application requests $ 122.90 in expenses for his expert, the receipts submitted only establish expenses of $ 97.90. Therefore, $ 25.00 must be deducted from

plaintiff's application for costs and disbursements.

### 3. Office Supplies

 Plaintiff seeks reimbursement in the amount of $ 191.61 for trial binders and indexes. However, such expenses are more appropriately considered ordinary overhead. Accordingly, this expense will be deducted from plaintiff's application.

### 4. Photocopying Expenses

 Section 1920(4) allows fees for "exemplification and copies of papers necessary obtained for use in the case" to be taxed as costs. However, the rate of $.25 per page claimed by the plaintiff is excessive. Therefore, the rate charged for photocopies will be reduced to $.10 per page, resulting in a deduction of $ 859.20 from plaintiff's application.

In sum, plaintiff's application for costs and disbursements will be reduced by a total of $ 1,150.81, resulting in a total award of costs and disbursements in the amount of $ 7,943.93.

### D. Front Pay

 LaPorta requests that the jury's advisory verdict regarding front pay be adopted. The parties agree that any front pay awarded must be reduced to present value at a discount rate of 5.54 percent, however, GE argues that the evidence does not support the amount of front pay awarded by the jury. It contends that LaPorta should be entitled to only one year of front pay because the evidence demonstrated that he intended to retire at the age of 65, which is in January 2002 and after that, he receives a pension from GE and his current employer which will equal what he would have received from GE. However, there was evidence presented at trial that there is a difference between the amount LaPorta will receive from his pen-

sions from GE and his current employer and what his GE pension would have been had he not been terminated. The jury's advisory front pay award reasonably reflects that difference. Therefore, the jury's advisory verdict that LaPorta is entitled to front pay in the amount of $ 110,-000 over seventeen years will be adopted. Reducing the front pay award to present value at a discount rate of 5.54 percent results in a total front pay award of $ 43,-984.75.

### E. Willful Violation of the ADEA

Plaintiff's request for judgment as a matter of law that GE willfully violated the ADEA is premature and more appropriately the subject of a motion pursuant to Fed.R.Civ.P. 50(b) after judgment is entered. Therefore, plaintiff's request is denied without prejudice to renew.

### III. CONCLUSION

Accordingly, it is

ORDERED, that

1. All claims by plaintiffs John J. Hogan, David J. Rees, and William Sheehan are DISMISSED;

2. Plaintiff Carmen LaPorta's disparate impact claim pursuant to the Age Discrimination in Employment Act and his New York State Human Rights Law claim are DISMISSED;

3. Judgment shall be entered in favor of plaintiff Carmen LaPorta against defendant General Electric Company with respect to his disparate treatment claim pursuant to the Age Discrimination in Employment Act in the amount of $ 470,-208.69 which represents the following:

a. Back pay in the amount of $ 117,-000.00

b. Pre-judgment interest in the amount of $ 15,930.01

c. Attorney's fees in the amount of $ 285,350.00

d. Costs and disbursements in the amount of $ 7,943.93

e. Front pay in the amount of $ 43,984.75

4. Post-judgment interest shall accrue from the date judgment is entered at the rate of 3.76 percent;

5. Plaintiff Carmen LaPorta's motion for judgment as a matter of law with respect to his claim that defendant General Electric Company willfully violated the ADEA is DENIED without prejudice to renew; and

6. Post-trial motions pursuant to Fed. R.Civ.P. 50 and 59 shall be filed on or before June 8, 2001; responses must be filed on or before June 22, 2001 and replies must be filed on or before June 29, 2001. No extensions are permitted. All post-trial motions in this matter are returnable on July 6, 2001 at 10:00 a.m. in Utica, New York.

The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.